Donnie Nathan TINKER, Appellant

v.

The STATE of Texas, Appellee.

No. 14–03–00809–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 26, 2004.

Bruno A. Shimek, Bryan, for appellants.

Stephen Christopher Taylor, Humble, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Donnie Nathan Tinker, was charged by indictment with two counts of aggravated sexual assault, enhanced by

two prior felony convictions. The jury found appellant guilty on the second count and assessed his punishment at sixty (60) years' confinement in the Texas Department of Criminal Justice, Institutional Division. In three points of error, appellant contends: (1) the evidence was legally and factually insufficient to support his conviction; (2) the trial court improperly admitted his tape-recorded statement into evidence; and (3) the trial court erred in denying his motion for new trial without a hearing. We affirm.

The complainant met appellant on July 8, 2002, when a mutual friend introduced them. At that time, appellant agreed to help repair the complainant's vehicle but no time was agreed upon by the parties for such repairs. The complainant did, however, inform appellant that she was planning to visit Lake Somerville the next day and would not be available. Appellant, nevertheless, arrived at the complainant's home the next morning.

Throughout the morning, appellant made some effort to obtain the necessary parts for the complainant's vehicle. Later that day, appellant accompanied the complainant and several others on their trip to Lake Somerville. After returning from the lake, appellant followed the complainant into her house, became physically violent, and proceeded to sexually assault her. The assault ended when neighborhood children entered the house, at which time the complainant fled to a neighbor's house to call the police. After a police investigation, appellant was charged with two counts of aggravated sexual assault. Subsequently, the jury found appellant not guilty as to count one, aggravated sexual assault by penetration of the mouth. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(A)(ii), (a)(2)(A)(ii)–(iii) (Vernon Supp.2002). However, the jury found appellant guilty on count two, aggravated sexual assault by penetration of the complainant's sexual organ. *See id.* § 22.021(a)(1)(A)(iii), (a)(2)(A)(ii)–(iii).

## Sufficiency of the Evidence

In his first point of error, appellant contends the evidence is legally and factually insufficient to support his conviction. Appellant seems to argue the lack of physical evidence indicates he did not commit the offense. Appellant also claims the State failed to prove the aggravating factor, namely that he placed the complainant in fear of death or serious bodily injury. Specifically, appellant argues that all evidence of this aggravating factor related only to count one of the indictment. Therefore, he concludes that because he was acquitted on count one, the evidence does not support his conviction of *aggravated* sexual assault in count two.

In evaluating a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim. App.1993). We will not overturn the verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim.App.1991). Therefore, if any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.1997).

When reviewing claims of factual insufficiency, it is our duty to examine the factfinder's weighing of the evidence. *Clewis v. State*, 922 S.W.2d 126, 133–134 (Tex. Crim.App.1996). Thus, the question presented in a factual sufficiency review is, "Considering all of the evidence in a neu-

tral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Zuniga v. State,* 144 S.W.3d 477, 484 (Tex. Crim.App.2004). Thus, there are two ways in which the evidence may be insufficient:

First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should *not* stand. This standard acknowledges that evidence of guilt can "preponderate" in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another way, evidence supporting guilt can "outweigh" the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard.

*Id.*

To secure a conviction for sexual assault, the State must prove the defendant intentionally or knowingly caused penetration of the sexual organ of another by any means, without that person's consent. TEX. PEN. CODE ANN. § 22.011(a)(1)(c) (Vernon Supp. 2002). The lack of consent can be proven by the threat or use of physical force or violence. *Id.* § 22.011(b)(1)–(2). However, *aggravated* sexual assault requires proof of an additional element. For aggravated sexual assault, the State must prove beyond a reasonable doubt the defendant intentionally or knowingly caused penetration of the sexual organ of another by any means, without that person's consent;

*and by acts or words occurring in the presence of the victim threatens to cause or places the victim in fear of death, serious bodily injury, or kidnapping.* TEX. PEN.CODE ANN. § 22.021(a)(1)(A)(ii), (a)(2)(A)(ii)–(iii) (Vernon Supp.2002).[1]

▪ Appellant first points to a lack of DNA or other physical evidence, which he suggests proves he did not commit the offense. Despite the lack of physical evidence, the complainant provided ample testimony to show a sexual assault occurred. The record reflects the following:

Q. [By the State's attorney:] So [appellant's] in [the house], you told him no, he's trying to grab you and then what happened?

A. I got loose and ran out the front door screaming for help.... [Appellant] grabbed me and pulled me back in the house and said 'here's your help,' and he started flinging me around and busting my face into the door frame and he was just throwing me from side to side and threw me into the bedroom on the bed.... [Appellant] raped me.... He put his penis inside me, and I was real dry and I could feel myself tearing on the inside, and he did that for a while and then he turned me around—no, and then he got off me and put his penis—he got outside of me and put his penis in my mouth.

Despite the lack of DNA evidence, the complainant's testimony alone is sufficient to support the jury's finding that sexual contact or penetration did in fact occur. *See Garcia v. State,* 563 S.W.2d 925, 928 (Tex.Crim.App.1978) (holding that victim's testimony is sufficient to prove sexual contact occurred despite no physical evidence). The jury also heard medical evi-

---

1. The indictment did not charge appellant with *causing* serious bodily injury under section 22.021(a)(2)(A)(I).

dence that the complainant suffered abrasions and a skin tear in and around her vagina, injuries which are consistent with painful, forceful sexual activity. Furthermore, the jury heard evidence that after being arrested, appellant admitted to officers that he had sex with the complainant, claiming that it was consensual. Therefore, the evidence is legally sufficient to support a conviction for sexual assault. *See generally* TEX. PEN.CODE ANN. § 22.011 (Vernon Supp.2002) (listing the statutory elements of sexual assault).

■ Appellant next argues the evidence does not support his conviction of *aggravated* sexual assault because the State failed to prove the aggravating factor. Specifically, appellant argues the evidence is insufficient to prove the complainant was placed in fear of death or serious bodily injury. Appellant claims the only evidence which tends to show the complainant was in fear for her life related to count one of the offense, sexual assault by penetration of the mouth. He cites the following testimony to support his contention:

Q. [By the State's attorney:] Did—what was happening when he had his penis in your mouth?

A. I couldn't breathe. I thought I was going to choke to death.... When he had his penis in my mouth it was so long I thought I couldn't breathe, but I think that was only once, for a while.

. . .

Q. Were you in fear for your life?

A. Yes.

Q. You testified previously about when he had his penis in your mouth that you were afraid you were going to choke to death?

A. I couldn't breathe.

Q. When he was attacking you all this time were you afraid that you were going to die?

A. Not the whole time. Not to the very end.

Because the complainant stated she was not in fear of her life until the second phase of the assault, *i.e.*, the oral penetration, appellant contends the evidence fails to show the first assault, *i.e.*, the vaginal penetration, was accompanied by any aggravating threat of death or serious bodily injury. However, beyond the portions of testimony cited by appellant, the record also indicates the complainant sustained a number of injuries during the attack. Medical records from a post-assault examination show that the complainant suffered numerous bruises and abrasions across her body, including on her arms, shoulder, and back. The attack also caused injuries to the complainant's vagina, which were substantiated by testimony from the nurse who treated her.

Admittedly, these injuries do not rise to the level of serious bodily injury.[2] However, included in the medical records are diagnoses from the nurses and physicians who treated the complainant. These diagnoses indicate that one of the more severe injuries was to the complainant's shoulder. Specifically, they describe the damage to her shoulder as "injur[ies] to the tendons that surround the joint ... [which] can

2. To sustain appellant's conviction, there must be sufficient evidence that the complainant was threatened with or placed in fear of death or *serious* bodily injury. *See Blount v. State*, 542 S.W.2d 164, 166 (Tex.Crim.App. 1976) (explaining that an aggravated rape conviction "can stand only if there was sufficient proof of a threat of imminent infliction of serious bodily injury."); *see also Hernandez v. State*, 946 S.W.2d 108, 110–13 (Tex.App.-El Paso 1997, no pet.) (holding the evidence was insufficient to support an aggravated robbery and aggravated assault conviction where wounds did not create any "serious bodily injuries" according to the statutory definition).

lead to a 'frozen' immobile shoulder if they are not treated properly." The diagnoses further describe the injury as "shoulder separation [which] is usually due to a direct blow to the shoulder, or falling on [her] outstretched hand. The ligament fibers connecting the collar bone and shoulder blade are torn." The diagnoses warn "[i]f this injury does not heal properly, you may be left with permanent deformity, and long-term pain and disability." Thus, the injury to the complainant's shoulder meets the definition of "serious bodily injury." [3]

When deciding criminal liability for aggravated sexual assault, the jury is entitled to consider a defendant's objective conduct and infer from the totality of the circumstances whether the defendant's overall conduct placed the victim in fear of death or serious bodily injury. *Ortiz v. State*, 804 S.W.2d 177, 179 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd); *Lindsey v. State*, 672 S.W.2d 892, 894 (Tex. App.-Dallas 1984, pet. ref'd); *see also Dacquisto v. State*, 721 S.W.2d 603, 604 (Tex. App.-Amarillo 1986, pet. ref'd) (affirming an aggravated sexual assault conviction where the defendant never verbally threatened the victim's life). Furthermore, when examining the evidence in aggravated sexual assault cases, "we review the evidence overall and determine whether the 'acts, words or deeds' of the actor were sufficient to place a reasonable person in complainant's circumstances in fear of death or serious bodily injury." *Dodson v. State*, 699 S.W.2d 251, 254 (Tex.App.-Tyler 1985, no pet.) (relying on *Bank v. State*, 662 S.W.2d 627 (Tex.App.-Houston [14th Dist.] 1983, pet. ref'd); *Harris v. State*, 666 S.W.2d 537 (Tex.App.-Austin 1984, no pet.); *Seek v. State*, 646 S.W.2d 557 (Tex. App.-Houston [1st Dist.] 1982, no pet.)).

We find that the jury could rationally have concluded from the evidence presented at trial that the complainant suffered serious bodily injury. The appellant having inflicted serious bodily injury upon the complainant early in the criminal episode, the jury could have rationally inferred that a reasonable person would fear additional serious bodily injury or death during the course of the assault. Simply because the complainant did not specifically say she feared serious bodily injury, does not mean she was not fearful. *See Selvog v. State*, 895 S.W.2d 879, 882 (Tex.App.-Texarkana 1995, pet. ref'd) ("There was no need for [the victim] to articulate the exact words, 'I was afraid.' "). Our own review of the evidence suggests that appellant's "acts, words or deeds" were sufficient to place a reasonable person in the complainant's circumstances in fear of death or serious bodily injury. As such, after considering

3. The Texas Penal Code defines serious bodily injury as: "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PEN.CODE ANN. § 1.07(46) (Vernon 1994). This definition stands in contrast to bodily injury, which the Code defines as: "physical pain, illness, or any impairment of physical condition." TEX. PEN.CODE ANN. § 1.07(8) (Vernon 1994); *see also Hernandez v. State*, 946 S.W.2d 108, 110–12 (analyzing the differences between "serious bodily injury" and bodily injury.").

While the complainant may not have suffered any long-term debilitating effects from these injuries, the medical records make it clear that absent proper treatment, she would have. The Texas Court of Criminal Appeals has explained when an injury would cause disfigurement or dysfunction if not treated, it is to be considered a "serious bodily injury." *Brown v. State*, 605 S.W.2d 572, 574–75 (Tex. Crim.App.1980) (citing *Boney v. State*, 572 S.W.2d 529 (Tex.Crim.App.1978)) ("The relevant issue was the disfiguring and impairing quality of the bodily injury as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment.").

all of the evidence in a neutral light, we find the jury was rationally justified in finding guilt beyond a reasonable doubt. Accordingly, we overrule appellant's first point of error.

### Admissibility of Recorded Statements

After being arrested, appellant was questioned by police on two separate occasions. Both sessions were electronically recorded, and the State offered appellant's recorded statements as evidence at trial. In his second point of error, appellant contends the trial court improperly admitted these statements. Specifically, he argues the State failed to provide defense counsel with copies of these statements twenty (20) days prior to trial as required by statute.

The admissibility of oral statements by an accused is governed by article 38.22 of the Texas Code of Criminal Procedure. *See* Tex.Code Crim. Proc. Ann. art. 38.22 (Vernon Supp.2004–2005). According to article 38.22 § 3(a)(5), recorded oral statements of an accused, made as a result of a custodial interrogation, are not admissible unless: "not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article." *Id.* § 3(a)(1), (a)(5). The Texas Court of Criminal Appeals has explained that the State is not required to "give" defense counsel a copy of any recorded statements, but rather, the State is merely required to "provide access" to the statements. *Lane v. State*, 933 S.W.2d 504, 515–17 (Tex.Crim.App.1996).

In *Lane*, the appellant claimed he was not provided copies of taped confessions because the copies were never served on defense counsel. *Id.* at 515. The State countered by arguing that copies of the confessions were only required to be "made available" to defense counsel. *Id.* at 515–16. The Court of Criminal Appeals thoroughly analyzed the requirements of section 3(a)(5) of article 38.22 and held that "provide" means to "make available or furnish." *Id.* at 516. The court explained, "[s]o long as defense counsel is informed of the existence of the recording and is permitted reasonable access to a copy, the purpose of § 3(a)(5) has been met." *Id.*; *see also Tigner v. State*, 928 S.W.2d 540, 542–44 (Tex.Crim.App.1996) (explaining that the rationale of this provision is to guarantee defense counsel an opportunity to examine the recordings to ensure no alterations were made).

Here, defense counsel admitted that he was aware of the taped statements. He also acknowledged at trial that he was given free access to his client's file at the district attorney's office, but complained that the tape recorded statements were not in the file. Defense counsel further argued that the State provided him with a copy of the taped statements only twelve or thirteen days before trial. The prosecutor acknowledged that the State made a copy of the tape and actually gave it to defense counsel just prior to trial. However, she explained that the State did so only to avoid having to get another copy for itself. The prosecutor noted that the district attorney's office was given a copy of the tape on July 22, 2002, and that defense counsel had full access to his client's file since that time.[4] The prosecutor further explained that the district attorney's office does not keep copies of tapes inside individual files. Instead, she said all tapes are

---

4. Appellant was represented by another attorney prior to November 25, 2002. However, the attorney who represented appellant at tri- al had from that date until the trial was held, in March 2003, to obtain access to appellant's file.

kept in a separate filing cabinet and that defense counsel could have listened to the tape at any time after July 22, 2002. Nothing in the record indicates defense counsel specifically requested or was denied access to the tape recorded statements at any time prior to trial. Where, as here, defense counsel is aware of the existence of taped statements, the State is only required to "permit reasonable access" to a copy. *See Lane,* 933 S.W.2d 504, 516. The record indicates the State met this requirement and, therefore, we overrule appellant's second point of error.

### Motion for New Trial

In his final point of error, appellant argues he was entitled to a new trial due to alleged jury misconduct. Appellant contends the jury: (1) found him guilty for reasons other than guilt; and (2) considered a compromise on punishment in order to find him guilty.

 A motion for new trial based on jury misconduct must be supported by affidavits verifying the misconduct. *See* Tex.R. Civ. P. 327(a); *Weaver v. Westchester Fire Ins. Co.,* 739 S.W.2d 23, 24 (Tex. 1987). The affidavit of a juror may be used to verify the misconduct. *See Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 368–72 (Tex.2000). However, a juror is strictly prohibited from testifying about any matter or statement that occurred during jury deliberations, or about the effect of anything on the juror's mind. Tex.R. Evid. 606(b); *Golden Eagle,* 24 S.W.3d at 368; *Weaver,* 739 S.W.2d at 24. An exception to this rule applies if the juror is testifying about "outside influences" that may have affected the outcome of the case. Tex.R. Evid. 606(b); *Golden Eagle,* 24 S.W.3d at 368; *Weaver,* 739 S.W.2d at 24. Therefore, a motion for new trial based on jury misconduct, which relies on affidavits of jurors, must allege that "outside influences" affected the jury's decision. *See* Tex.R. Evid. 606(b); *Golden Eagle,* 24 S.W.3d at 368; *Weaver,* 739 S.W.2d at 24. To constitute "outside influences," the information must have come from a source outside the jury, *i.e.,* a non-juror who introduces information affecting the verdict. *Golden Eagle,* 24 S.W.3d at 370; *see also Hicks v. State,* 15 S.W.3d 626, 629 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (holding a juror's affidavit inadmissible where she claimed statements from jury foreman and other jurors caused her to vote guilty despite reasonable doubt); *Hart v. State,* 15 S.W.3d 117, 122 (Tex.App.-Texarkana 2000, pet. ref'd) (holding that purported coercion by other jurors to reach a guilty verdict was not an outside influence); *Traylor v. State,* 43 S.W.3d 725, 731 (Tex.App.-Beaumont 2001, no pet.) (reasoning that bargaining for votes to reach a guilty verdict was not an outside influence).

 In support of his motion for new trial, appellant attached an affidavit from one of the jurors. The affidavit described how the jury reached a verdict and alleged that several jurors found appellant guilty for reasons other than guilt. No other affidavits were used to support the motion. The State moved to quash the juror's affidavit under Texas Rule of Evidence 606(b). The trial court quashed the affidavit and, because it was the only support for appellant's motion, the court denied the motion for new trial without a hearing. After reviewing the juror's affidavit in this case, we find that it addressed only matters which the juror learned during jury deliberations. These matters clearly came from the other jurors and, as such, do not constitute outside influences. Accordingly, the trial court properly quashed the juror affidavit and denied appellant's motion for new trial. We overrule appellant's third point of error.

The judgment of the trial court is affirmed.